Mary Frances SMILEY, Appellant,

v.

Clifford A. JOHNSON, Rick L. Mai,
and TMJ Joint Venture, Appellees.

No. 05–86–01284–CV.

Court of Appeals of Texas,
Dallas.

July 18, 1988.

Rehearing Denied Dec. 12, 1988.

L. Vance Stanton, Dallas, for appellant.

Jerry D. Brownlow, Grand Prairie, for appellees.

Before DEVANY, STEWART and HECHT, JJ.

HECHT, Justice.

John F. Tufts, Sr. ("Senior") has been adjudicated *non compos mentis.* His son, John F. Tufts, Jr. ("Junior"), claiming to be Senior's attorney-in-fact, conveyed Senior's property to a joint venture in which Junior owned a one-third interest. When Senior's daughter, Mary Frances Smiley, complained to the probate court of Junior's self-dealing, the probate court held that Junior had breached his fiduciary duty to Senior. Nevertheless, the probate court approved the sale. Smiley appeals on her father's behalf. We reverse the judgment of the probate court, render judgment in favor of Senior's estate in certain respects, and remand the case for further proceedings.

I

On August 28, 1985, Junior sold and conveyed to TMJ Joint Venture a 45.9-acre tract of property owned by his father, Senior. At the time, Junior held two powers of attorney from Senior. One was a special power dated June 27, 1985, specifically authorizing Junior to sell the property. The other was a general power dated March 12, 1984, when Senior was diagnosed as having Alzheimer's disease.

TMJ was created four or five months before it purchased Senior's property and was owned equally by Junior, Rick L. Mai and Clifford A. Johnson. TMJ agreed to pay Senior $1,837,104 for the property, which Johnson testified was more than the value shown in four separate appraisals he obtained at the time. At closing, TMJ gave Senior $1,000 cash and a promissory note for $1,827.104.[1] The note called for payment of interest only for five years at the rate of 12% per annum, with the entire principal balance due at the end of five years.

On January 26, 1986, Smiley applied for appointment of a guardian for her father and sued to reclaim his property. Smiley accused Junior of self-dealing and breach of fiduciary duties, and alleged that he had joined with Mai and Johnson in a scheme to obtain Senior's property for a million dollars less than its fair market value. The probate court found Senior to be of unsound mind and appointed guardians of his estate and person. The newly appointed guardian of the estate then moved for court approval of the sale of Senior's property to TMJ, based upon what he had been told of Johnson's appraisals. But, after commissioning his own appraisal of the property, which estimated its fair market value at about the time of the sale to TMJ to be $6,500,000, more than three and one-half times what TMJ paid, the guardian of the estate withdrew his application for approval of the sale and himself asserted that the price paid by TMJ was wholly inadequate.

Following a hearing, the probate court found that Junior breached his fiduciary duty to Senior by selling Senior's property to TMJ, but found that the terms of the sale were fair and reasonable and approved it. The probate court imposed a constructive trust in favor of Senior's estate on Junior's one-third interest in the property

---

1. The $9,000 discrepancy between the note promised and the note given was apparently a mistake by the parties at the time of the transaction.

through his ownership of TMJ, but not on any interest of Mai and Johnson in the property or TMJ. The probate court then ordered the estate to sell to Mai and Johnson the constructive trust interest it have been awarded, and decreed that the estate take nothing against them. The probate court's rulings are contained in two orders signed September 4, 1986, from which Smiley appeals as a person interested in Senior's estate.[2] *See* TEX. PROBATE CODE ANN. § 113 (Vernon 1980).

## II

### A

██ Smiley first complains that the probate court erred in failing to find that Senior was incompetent to execute the two powers of attorney given to Junior, and in failing to cancel those powers. Smiley argues that the evidence was overwhelming that Senior was of unsound mind on March 12, 1984, the date of the first power, and that it was undisputed that he was of unsound mind on June 27, 1985, the date of the second power. We disagree.

There seems to be little doubt that Senior began to experience some mental infirmity as early as February 1984 when he was first diagnosed as having Alzheimer's disease. When Senior first become incompetent to tend to his own affairs, however, is not at all clear from the record. The evidence as to his mental condition, even as late as June 1985, is far from conclusive. The probate court apparently resolved the conflicting evidence to conclude that Senior was of sound mind when he executed powers of attorney to Junior, contrary to Smiley's contention. That was its prerogative. We cannot say on this record that the probate court's failure to find that Senior was incompetent to execute the two powers of attorney to Junior was so against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, Smiley's points of error one through four are overruled.

### B

██ Smiley next contends that the probate curt erred in failing to impose a constructive trust on Mai's and Johnson's interest in Senior's property through TMJ, and in approving the sale of the property to TMJ. We agree.

The probate court found that Junior breached his fiduciary duty to Senior by selling Senior's property to TMJ, and imposed a constructive trust on Junior's one-third interest in the property represented by his one-third ownership interest in TMJ. The evidence is undisputed that Mai and Johnson had met Senior and visited with him, and had actual knowledge that Senior suffered some mental infirmity, even if it was not incapacitating. Mai and Johnson also admittedly knew of Junior's fiduciary responsibilities to his father. Besides this actual knowledge, Mai and Johnson, as Junior's partners, shared his knowledge of Senior by imputation. *See Gaynier v. Ginsberg*, 715 S.W.2d 749, 758 (Tex.App.— Dallas 1986, writ ref'd n.r.e.). Despite Mai's and Johnson's actual and imputed knowledge of Senior's condition and Junior's responsibilities to him, the probate court refused to impose a constructive trust on Mai's and Johnson's interest in the property and TMJ.

Having participated fully with Junior as his partners, having shared, both actually and by imputation, Junior's knowledge of Senior, and having shared the benefits from the sale of Senior's property, Mai and Johnson must share with Junior his liability for breach of his fiduciary duties. The wrong that Junior did his father's estate is not diminished simply because he did not act alone. For complete redress of the wrong suffered, the estate was entitled to a constructive trust, not only on Junior's interest in the property through TMJ, but on Mai's and Johnson's interests as well.

Where a party through a breach of his trust and in violation of fiduciary relations thereby obtains an advantage, equi-

---

**2.** This Court denied appellees' motion to extend the time for filing their brief and struck their late-filed brief from the appellate record. This appeal has proceeded without a brief of appellees and without oral argument.

ty has the power ... to prevent such a person from reaping any advantage by such fraud, whether actual or constructive. The remedy which equity gives 'reaches all those who are actually concerned in the fraud, all who directly and knowingly participate in its fruits, and all those who derive title from them voluntarily or with notice.'

*Miller v. Himebaugh*, 153 S.W. 338, 342 (Tex.Civ.App.—Amarillo 1913, writ ref'd) (quoting *Martin v. Robinson*, 67 Tex. 368, 381, 3 S.W. 550, 557 (1887)). The probate court erred in failing to impose a constructive on Mai's and Johnson's interest in Senior's property, and in decreeing that Smiley take nothing against them.

■ Furthermore, the probate court erred in approving the sale of the property to TMJ. In the first place, such approval conflicts with the court's finding that Junior breached his fiduciary duties to Senior in selling TMJ the property. Having reached this conclusion, the probate court could not consistently find that the terms of the sale were fair and reasonable. Moreover, to find the inadequate price and lenient terms of this sale fair and reasonable is so contrary to the overwhelming evidence as to be manifestly unjust.

Consequently, we sustain Smiley's points of error five through sixteen and eighteen through twenty.[3]

### III

Smiley informs us in her brief that TMJ has conveyed Senior's property to strangers to this proceeding. The record does not reflect whether any such strangers are good faith purchasers for value, entitled to hold the property free of any claim by Senior's estate. The record also does not reflect whether and to what extend Junior, Mai and Johnson benefitted from the purchase and any sale of Senior's property. These issues, and any others which may properly be raised, remain to be resolved by the probate court.

Accordingly, we reverse the orders of the probate court issued September 4, 1986. We render judgment that Junior's sale of Senior's property to TMJ was not fair and reasonable and is disapproved, and that any interest in Senior's property remaining in Junior, Mai and Johnson and TMJ is held in constructive trust for Senior's estate. We remand the case to the probate court for further proceedings not inconsistent with this opinion.

### ON MOTION FOR REHEARING

■ Appellees assert for the first time in their motion for rehearing that appellant did not have standing to prosecute this appeal. Because appellees did not timely file a brief, we will only consider matters of fundamental error in the motion for rehearing. *Trevino v. Gonzalez*, 749 S.W. 2d 221, 226 (Tex.App.—San Antonio 1988, no writ); *Watson v. Glen Falls Ins. Co.*, 505 S.W.2d 793, 797 (Tex.1974). Fundamental error exists only in instances in which the record shows on its face that the court lacked jurisdiction or that public interest is directly and adversely affected as that interest is declared in the statutes or Constitution of Texas. *Pirtle v. Gregory*, 629 S.W.2d 919 (Tex.1982). A party's failure to show a justiciable interest in the controversy is not fundamental error. *Texas Industrial Traffic League v. Railroad Comm'n*, 633 S.W.2d 821 (Tex.1982); *Coffee v. William Marsh Rice University*, 403 S.W.2d 340 (Tex.1966). Accordingly, we hold that appellees have waived their challenge to appellant's standing.

■ Even if appellees had not waived the issue, appellant has standing to pursue this appeal under section 113 of the Probate Code, which reads:

Any person has the right ... to contest any proceeding which he deems to be injurious to the ward, or to commence any proceeding which he deems beneficial to the ward.

---

3. Under this analysis we need not address Smiley's argument in point of error seventeen that the probate court abused its discretion in mak-

ing Senior's estate in effect a one-third owner of TMJ when it had found that the estate could not financially afford that role.

Appellees' motion for rehearing is over-ruled.