Thompson v. State 







NO. 10-90-176-CV

IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

Â Â Â Â Â Â Â Â Â Â LAWRENCE EDWARD THOMPSON,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â Â Â Â Â Â v.

Â Â Â Â Â Â Â Â Â Â JAMES R. MANNIX, ET AL,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellees

* * * * * * * * * * * * *

 From 52nd Judicial District Court
Coryell County, Texas
Trial Court # 25249

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
Â Â Â Â Â Â Â Â Â Â Lawrence Thompson, a prison inmate, filed a pauper's affidavit and a pro se petition
alleging that James Mannix, Marie Faubin, R. Avants, Jane Doe, and James Collins, all
employees of the Texas Department of Criminal Justice, wrongfully confiscated and converted his
personal property. Relying on section 13.001 of the Civil Practice and Remedies Code, the court
dismissed the suit before service of process on the ground that "the action's realistic chance of
ultimate success is slight." See Tex. Civ. Prac. & Rem. Code Ann. Â§ 13.001(b)(1) (Vernon
Supp. 1991). Thompson claims that the court erred when it dismissed his action as frivolous and
that the dismissal violated the "open court" provision of the Texas constitution. See Tex. Const.
art. I, Â§ 13. The dismissal order will be affirmed.



Â Â Â Â Â Â Â Â Â Â Thompson first asserts that the court erred when it dismissed the action as frivolous. 
Section 13.001 and its federal counterpart authorize the dismissal of pro se suits by paupers if the
court is satisfied that the action is frivolous. See Tex. Civ. Prac. & Rem. Code Ann. Â§ 13.001
(Vernon Supp. 1991); 28 U.S.C.A. Â§ 1915(d) (West 1966). The rationale behind these statutes
is to prevent a pauper litigant from filing "frivolous, malicious, or repetitive lawsuits." Neitzke
v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1834, 104 L.Ed.2d 338 (1989). Judges can dismiss
claims based on "indisputably meritless legal" theories as well as those whose "factual contentions
are clearly baseless." Id. 109 S.Ct. at 1833.
Â Â Â Â Â Â Â Â Â Â Thompson claimed in his suit that the defendants confiscated and converted the following
items of personal property: five highlighters, an extension cord, four wooden 3x5 picture frames,
a stainless steel pen and pencil set, a mirror, three hospital bracelets, and a fan. He sought to
recover $30,000 compensatory damages, $10,000 exemplary damages from each defendant, court
costs, attorney's fees, reimbursement for all incidental expenses, and pre- and post-judgment
interest.
Â Â Â Â Â Â Â Â Â Â A court has broad discretion when determining whether to dismiss a suit as frivolous. 
Johnson v. Lynaugh, 766 S.W.2d 393, 394 (Tex. App.âTyler 1989, writ denied). Here, the
court could have considered that the defendants, all state employees, were entitled to quasi-judicial
immunity from damages. See Johnson v. Peterson, 799 S.W.2d 345, 347 (Tex. App.âHouston
[14th Dist.] 1990, no writ). The court also could have concluded that the actual damages were
de minimus. Furthermore, because "prison officials have broad administrative and discretionary
authority over the institutions they manage and lawfully incarcerated persons retain only a narrow
range of protected liberty interests," the court could have determined that the defendants were
legally justified in confiscating Thompson's personal property. See Johnson v. Lynaugh, 800
S.W.2d 936, 938-39 (Tex. App.âHouston [14th Dist.] 1990, writ granted). 
Â Â Â Â Â Â Â Â Â Â Accordingly, we hold that the court did not abuse its discretion when it dismissed the claim
as frivolous because it could have concluded that the suit had no arguable basis either in fact or
law. Point one is overruled.
Â Â Â Â Â Â Â Â Â Â Point two is that the dismissal before service of process violated Thompson's constitutional
right to open access to the courts. He failed to make his constitutional challenge in the trial court. 
Rather than filing a motion to reinstate the suit in the trial court and raising the constitutional claim
there, Thompson appealed the dismissal order and alleged for the first time on appeal that it
violated his constitutional rights. 
Â Â Â Â Â Â Â Â Â Â A constitutional challenge must be made in the trial court unless the challenge presents
fundamental error. Johnson, 800 S.W.2d at 939. Because Thompson's challenge does not raise
fundamental error, his complaint that the dismissal violated his constitutional right is not properly
before this court. See id.; Smiley v. Johnson, 763 S.W.2d 1, 4 (Tex. App.âDallas 1988, writ
denied) (holding that fundamental error occurs under limited circumstances such as when the court
does not have jurisdiction or the public interest is directly and adversely affected). Accordingly,
point two is overruled.
Â Â Â Â Â Â Â Â Â Â All points have been overruled and the order of a dismissal is affirmed. Because the
dismissal of Thompson's claim was without prejudice, he may bring this action again. If the trial
court dismisses the subsequent suit before service of process, Appellant could file a motion to
reinstate the suit, asserting the constitutional challenge, and, if denied, then on appeal his
constitutional challenge would be properly before us.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BOB L. THOMAS
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Before Chief Justice Thomas and Justice Vance
Â Â Â Â Â Â Â Â Â Â (Justice Cummings not participating)
Affirmed
Opinion delivered and filed July 25, 1991
Publish



"SR;595">.  The evidence is legally sufficient if it would
enable reasonable and fair-minded people to reach the verdict under review. Â Id. at 827.Â  We credit favorable evidence if reasonable
jurors could, and disregard contrary evidence unless reasonable jurors could
not.Â  Id. Â If the evidence falls within a Âzone of
reasonable disagreement,Â we cannot substitute our judgment for that of the
trier-of-fact.Â  See id. at 822.

Â Â Â Â Â Â Â Â Â Â Â  In
reviewing a factual sufficiency issue, we consider all the evidence, whether it
supports or is contrary to the finding.Â  Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003).Â  Reversal could occur because the finding
was based on weak or insufficient evidence or because the proponentÂs proof,
although adequate if taken alone, is overwhelmed by the opponentÂs contrary
proof.Â  Checker Bag Co. v. Washington, 27 S.W.3d 625, 633 (Tex. App.ÂWaco 2000, pet denied) (citing William Powers, Jr. & Jack Ratliff, Another Look at ÂNo
EvidenceÂ and ÂInsufficient Evidence,Â 69 Tex. L. Rev. 515, 519 n.11 (1991)).Â  We set aside the finding
based on factual insufficiency only if the evidence supporting the finding is
so contrary to the overwhelming weight of the evidence as to be manifestly
unjust and clearly wrong.Â  Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402,
407 (Tex. 1998).

We review the trial courtÂs conclusions
of law de novo.Â  Dominguez, 163 S.W.3d at 325.Â  Under de novo review,
the reviewing court exercises its own judgment and redetermines each legal
issue.Â  Quick v. City of Austin, 7 S.W.3d 109, 116 (Tex. 1998).

ÂAS ISÂ
Agreement

Â Â Â Â Â Â Â Â Â Â Â  Proof of causation is
essential for recovery on FlakeÂs DTPA and breach of warranty causes of
action.Â  Tex. Bus. & Com. Code Ann. Â§17.50(a)
(Vernon Supp. 2005).Â  Passat argues that the Âas isÂ clause in the contract
precludes Flake from proving Passat caused it harm. Â Flake argues that Passat
failed to plead the Âas isÂ clause as an affirmative defense to its DTPA claims
and therefore the issue is not before us.Â  Flake failed to cite any authority
that requires an Âas isÂ clause to be pled as an affirmative defense.Â  Regardless,
the issue was tried by consent. Â The Âas isÂ clause is a significant issue
because if the Âas isÂ clause in the second contract is valid, legally
sufficient evidence will not exist to show that Passat caused Flake damages and
Flake will not recover on its DTPA and breach of warranty claims.Â  City of Keller, 168 S.W.3d at 820. 

Â  Â Â Â Â Â Â Â Â Â  ÂThe validity of an Âas isÂ
agreement is determined in light of the sophistication of the parties, the
terms of the Âas isÂ agreement, whether the Âas isÂ clause is freely negotiated,
whether it was an armÂs length transaction, and whether there was a knowing
misrepresentation or concealment of a known fact.ÂÂ  Larsen v. Langford, 41
S.W.3d 245, 252 (Tex. App.ÂWaco 2001, pet. denied) (citing
Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd., 896 S.W.2d 156,
160-62 (Tex. 1995)).

Â Â Â Â Â Â Â Â Â Â Â  Throughout his
career, Bob Montgomery has worked for two commercial laundry manufacturers and,
at the time of negotiating the present contract, had approximately thirteen yearÂs
experience selling commercial laundry equipment and negotiating sales.Â  Leon
Flake is the CEO of Flake Industrial Services and testified that he had been in
the laundry business for fifty years and had experience in negotiating
equipment purchase agreements.Â  Further, the parties had experience negotiating
with each other in the past.Â  Before negotiating the sale of the UT-45, Montgomery was involved in the sale of about a dozen pieces of equipment to Flake.Â  Both
individuals had experience in the industry and with commercial laundry
equipment.Â  There is evidence that the parties were similarly knowledgeable and
sophisticated in this industry.

In Prudential, the
court stated that in determining the validity of an Âas isÂ clause, a reviewing
court must also look to the terms of the agreement itself.Â  The terms of the
agreement in Prudential stated that the purchaser agreed to take the
property Âas isÂ with any and all latent and patent defects.Â  Prudential, 896
S.W.2d at 160.Â  The Prudential agreement also stated that the purchaser
acknowledged that it was relying upon its own examination of the property.Â  Id.Â  The terms of the present agreement state that the equipment was
purchased and sold in an ÂAS ISÂ condition with no implied warranties of any
kind, including, without limitation, any implied warranties of merchantability
or fitness for a particular purpose.Â  It is not necessary that the terms of an
Âas isÂ agreement be as specific as the Prudential terms if the contract
leaves no doubt exactly what the parties agreed to. Â Larsen, 41 S.W.3d at 252.Â 
By signing the agreement with the Âas isÂ language, agreeing to accept the
equipment without any implied warranties, and signing the agreement with a
merger clause which stated that the written contracts contained the entire understanding
of the parties, this contract left no doubt that Flake intended to rely solely
on the statements in the contract.

The evidence presented
further shows that Montgomery and Flake actively negotiated the terms of the contract
and conducted this transaction at armÂs length.Â  Handwritten changes were made
to the agreement including changes to the express warranty provisions.Â 
Further, Montgomery testified that Leon Flake actively negotiated the
contract.Â  Looking at the totality
of circumstances, the evidence shows that Flake agreed to make its own
appraisal of the bargain and accepted the risk that it might be wrong.Â  Prudential,
896 S.W.2d at 161.Â  We hold the agreement
between the parties contained a valid Âas isÂ clause which negates causation
unless Flake established that it was fraudulently induced to enter the
agreement.

Fraudulent Inducement

An otherwise valid Âas isÂ
agreement will not negate the causation element of a DTPA or a breach of
warranty claim if the buyer can prove fraudulent inducement such as a knowing misrepresentation or concealment
of a known fact.Â  Id. at 162.Â  In order to prove fraudulent inducement, evidence
must exist for each element of a simple fraud claim.Â  Fletcher v. Edwards, 26
S.W.3d 66, 77 (Tex. App.ÂWaco 2000, pet. refÂd).Â  The elements of simple fraud
are:

(1)Â Â 
a material
representation;

(2)Â Â  which is false;

(3)Â Â  which was known to be false when made or
was made recklessly as a positive assertion without knowledge of its truth;

(4)Â Â  which was intended to be relied upon;

(5)Â Â  which was relied upon; and 

(6)Â Â  which caused injury.

Â 

Id. Â Flake
argues Passat represented that the UT-45 had a life expectancy of fifteen to
twenty years.Â  Montgomery testified that during negotiations with Leon Flake he
stated that equipment of the nature of the UT-45 generally has a life
expectancy of fifteen to twenty years.Â  Flake did not present evidence of the
life expectancy of commercial laundry equipment to contradict this
representation.Â  Further, Montgomery testified that to his knowledge his
statement was correct at the time of the negotiations.Â  Flake has not presented
evidence that MontgomeryÂs statements were false when made or made recklessly;[1]
therefore, the Âas isÂ clause in the agreement is valid and negates the causation
element of FlakeÂs DTPA and breach of warranty claims.Â  We sustain issue one,
in part.

Failure to Disclose

In its second issue, Passat challenges
the factual sufficiency of the evidence to support the trial courtÂs finding
that Passat failed to disclose the UT-45 was an experimental machine.Â  In
viewing all the evidence, we must set aside this finding.Â  The first contract
executed by the parties in December 1990 clearly stated that the UT-20 and its
replacement were Âprototypes.ÂÂ  Further, Bob Montgomery testified that he Âmade
it known to FlakeÂ that the progression of the batch washer was to be larger
capacity machines and referred to the replacement UT-45 as a Âfuture model.ÂÂ 
Coupled with Leon FlakeÂs significant experience in the industry, these facts
indicate that Flake was aware that Passat viewed the UT-45 as an experimental
machine.Â  Therefore, we sustain issue two and we must remand to the trial court
the issue of whether the failure to disclose that the UT-45 was experimental
fraudulently induced Flake to enter the agreement with Passat so as to negate
the Âas isÂ clause in the agreement.[2]

Â 

Â 

Alternative
Findings

The fact that the trial
courtÂs DTPA and breach of warranty findings are not supported by legally
sufficient evidence does not end our inquiry.Â  When a party obtains favorable
findings on alternative theories, it may obtain judgment on the theory
entitling it to the greatest or most favorable relief.Â  Transport Ins. Co.
v. Faircloth, 898 S.W.2d 269, 274 (Tex. 1995); Boyce Iron Works, Inc. v.
Southwestern Bell Tel. Co., 747 S.W.2d 785, 787 (Tex. 1988).Â  If the
judgment is reversed on appeal, the appellate court should consider all
alternative theories and render judgment on the theory granting the next
highest award of damages that can be rendered from the pleadings, evidence, and
verdict.Â  Gulf States Utils. Co. v. Low, 79 S.W.3d 561, 566 (Tex. 2002) (citing Birchfield v. Texarkana MemÂl Hosp., 747 S.W.2d 361, 367 (Tex. 1987)).Â  Thus, we will determine if Flake may recover under the trial courtÂs findings
supporting a breach of contract.

Sufficiency of Breach of Contract
Finding

Â Â Â Â Â Â Â Â Â Â Â  Passat asserts there is no
legally or factually sufficient evidence to support the trial courtÂs finding
that Passat breached the warranty provision of the sales contract.Â  The
agreement provided that during the express warranty period, Passat would repair
the UT-45 or provide replacement parts and diagnose problems with the machine.Â 
At trial, Flake presented evidence that Andy Baldwin, a Passat technician,
inspected the UT-45 and determined that two of its compartments needed to be
replaced.Â  The evidence showed that although this diagnosis was not indicated
in BaldwinÂs service report, it was made known to Passat by Flake.Â  Further, as
early as August 1997 Passat was aware that the UT-45 was in need of repair or
replacement parts.Â  As of December 1997, Passat had failed to provide repair or
replacement parts.Â  We hold this evidence to be legally
and factually sufficient to support the trial court's finding that Passat
breached the warranty provision of the contract.Â  We overrule issue one as to
this claim.

Damages

The general rule for measuring damages
for breach of contract is Âjust compensation for the loss or damage actually
sustained.ÂÂ  Stewart v. Basey, 245 S.W.2d 484, 486 (1952).Â  Damages for breach of contract protect restitution interests,
reliance interests, and expectation interests.Â  Qaddura v. Indo-European
Foods, Inc., 141 S.W.3d 882, 889 (Tex. App.ÂDallas 2004, pet. denied) (citing
OÂFarrill Avila v. Gonzalez, 974 S.W.2d 237, 247 (Tex. App.ÂSan Antonio
1998, pet. denied)).Â  The most common interest protected is the expectation or
benefit-of-the-bargain interest.Â  Id.Â  In this case, to protect
the expectation interest, the measure of damages is the reasonable cost to
repair the UT-45.Â  The trial court found that amount to be $50,000, which we
find to be supported by legally and factually sufficient evidence.Â  Flake is
also entitled to recover attorneyÂs fees, which the trial court found to be
$29,317.50.Â  Tex. Civ. Prac. & Rem.
Code Ann. Â§ 38.001 (Vernon 1997).

We overrule issues three, four, and
five.Â  

CONCLUSION

For the reasons stated, the judgment of
the trial court is reversed, and we remand to the 
trial court for further proceedings consistent with this opinion.

Â 

BILL VANCE

Justice

Â 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Reversed
and rendered

Opinion
delivered and filed March 15, 2006

[CV06]









Â Â Â  [1]Â Â Â Â Â Â Â Â Â Â  We
also believe that the reliance element fails.Â  The system had been in use by
Flake for a year and a half and Flake had extensive experience with PassatÂs
equipment line.

Â 





Â Â Â  [2]Â Â Â Â Â Â Â Â Â Â  Passat
challenges only the factual sufficiency and not the legal sufficiency of the
failure-to-disclose finding.

Â