Ellen Denham SCHNITZIUS, Appellant,

v.

Donald D. KOONS, Judge Presiding,
255th Judicial District Court, Dallas
County, Texas, Appellee.

No. 05–91–00521–CV.

Court of Appeals of Texas,
Dallas.

July 9, 1991.

James B. Pinson, Dallas, for appellant.

G.P. Monks, Houston, Carolyn Findley Price, Arlington, for appellee.

Before ENOCH, C.J., and ROWE and WHITTINGTON, JJ.

## OPINION

ENOCH, Chief Justice.

Relator Ellen Denham Schnitzius seeks a writ of mandamus against respondent the Honorable Donald D. Koons, Judge of the 255th Judicial District Court of Dallas County, Texas. She argues that she had obtained a final default judgment against the real party in interest Amwest Surety Insurance Company, that Amwest had filed an untimely motion to vacate the default judgment, and that Judge Koons vacated the default judgment on Amwest's motion after the court had lost plenary jurisdiction to do so. For the reasons given below, we conditionally grant the writ of mandamus.

Ellen divorced Michael McKay[1] in early 1986. There were two minor children. Michael was ordered to pay child support twice monthly. When Michael defaulted on the support payments, Ellen moved to have him held in contempt. Michael did not appear at the contempt hearing, and the 255th Court issued an order of attachment. The order provided that Michael could obtain his release if he posted a proper appearance bond in the amount of $2,000, payable to Ellen.

Michael was attached, and he filed an appearance bond. Amwest was a surety on the bond.[2] Michael was released on the strength of the bond. The court set a new hearing for Ellen's contempt motion. When Michael again did not appear, Ellen filed a motion seeking forfeiture of the bond. She requested the court to hold Amwest liable on the bond and to compel it to deposit $2,000, as proceeds from the bond, into the registry of the court. Alternatively, the motion requested a judgment against Amwest directly in favor of Ellen for the bond proceeds. Ellen did not attempt formal service of process upon Amwest, but she did mail a copy of the motion, certified mail, return receipt requested, and she obtained Amwest's receipt. Amwest never answered the motion.

On July 17, 1989, the court signed a judgment awarding Ellen $2,000 from Amwest. Ellen mailed a copy of the judgment, certified mail, return receipt requested, to Amwest. Although the record indicates that the receipt was not signed, Amwest does not allege that it did not timely receive a copy of the judgment. Amwest still took no action until Ellen attempted execution on her judgment.

On February 20, 1990, more than six months after the judgment was signed, Amwest filed a "motion to set aside void judgement [*sic*] and stay execution." The motion argued only that the judgment was void because Amwest had never been served with citation, so that the court never acquired jurisdiction over its person. The court immediately stayed execution of its judgment until it could conduct a hearing on Amwest's motion. On April 13, 1990, the court conducted a hearing.[3] Although

1. Michael McKay appears to have used the name Michael Darrel[l] Bryant as well as Michael McKay.

2. Amwest argues that it never signed the bond. However, the record shows that Amwest executed a power of attorney to make John Savage, by Bobby Holder, its attorney in fact to execute a bail bond on behalf of Michael. The bond itself is signed by Bobby Holder. Whatever defenses Amwest might have had, based upon any wording in the bond or any alleged failure

to sign in the capacity of a surety on the bond, it was clearly a signatory.

3. We have no statement of facts from that hearing. Amwest argues that we cannot grant Ellen mandamus relief because she has not brought us a complete record. Amwest does not contest, however, that the hearing was not evidentiary in nature: the only issue was whether Amwest could attack the July 17, 1989 judgment after the 255th Court's plenary jurisdiction over that judgment had expired. When it is undisputed that no testimony was adduced at a hearing, no

the ruling was reduced to a written order only considerably later (on March 23, 1991), the judge announced at the hearing that he would in fact vacate the July 17, 1989 judgment as void. On October 19, 1990, Ellen filed a motion for rehearing, asking the court to vacate its previous "orders" (the order staying execution and the order, not yet reduced to writing, declaring the July 17, 1989 judgment void). The motion argued that the court had lost its plenary jurisdiction to vacate its earlier judgment, except by petition for bill of review. On March 29, 1991, the judge signed an order denying Ellen's motion. Still contending that the court had lost plenary jurisdiction to vacate its judgment except by petition for bill of review, Ellen requests this Court to issue a writ of mandamus against Judge Koons, to compel him to vacate his orders vacating the July 17, 1989 judgment and staying its execution and to reinstate the July 17, 1989 judgment.

We address first whether the July 17, 1989 judgment is void because Amwest was never formally served with process. The Due Process Clause requires that a defendant be served with process in order for a default judgment against him to stand, even if the defendant cannot raise a meritorious defense. *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 86–87, 108 S.Ct. 896, 900, 99 L.Ed.2d 75 (1988). The Supreme Court of the United States, however, has also held that a surety on a bond filed of record in pending litigation makes an appearance subjecting itself to the trial court's in personam jurisdiction when it signs as a surety: by becoming a surety, the party submits itself to be governed by the fixed rules which regulate the practice of the court. *See Pease v. Rathbun–Jones Engineering Company*, 243 U.S. 273, 277–78, 37 S.Ct. 283, 286, 61 L.Ed. 715 (1917). Sureties become "quasi parties" to the proceedings and subject themselves to the jurisdiction of the court, so that judgment may be rendered against

statement of facts from that hearing is necessary to justify mandamus relief. *See Barnes v.*

them even in the absence of any further notice at all. *See Pease*, 37 S.Ct. at 286.

In Texas, sureties on replevy bonds are parties to the suit in a limited sense, so as to authorize judgment against them on their bond in the event of a judgment against their principal. *Lawyers Lloyds of Texas v. Webb*, 152 S.W.2d 1096, 1098 (Tex. 1941). Similarly, an appellee can initiate a common-law action against the surety on a supersedeas bond, as on any other contract, but the appellee can also simply file a motion for judgment against the surety in the appellate court. *See Muniz v. Vasquez*, 797 S.W.2d 147, 150 (Tex.App.— Houston [14th Dist.] 1990, no writ). During oral argument, Amwest argued that the above cited authorities involved sequestration bonds, replevy bonds, cost bonds, and supersedeas bonds. Because no authority specifically addressed appearance bonds, Amwest concluded that a surety on an appearance bond had to be formally served with process before judgment could be entered against it on the bond.

We perceive no distinction that justifies the conclusion that the kind of bond determines whether a surety has appeared when the bond is filed in a court proceeding. When Amwest signed Michael's appearance bond to obtain Michael's release under the order of attachment, Amwest appeared before the court, at least for the purpose of submitting itself to that court's personal jurisdiction to enter a judgment of bond forfeiture against it. Once Amwest appeared, it had constructive notice of everything that subsequently happened in that proceeding. *See K & S Interests, Inc., v. Texas American Bank/Dallas*, 749 S.W.2d 887, 892 (Tex. App.—Dallas 1988, writ denied) (on mot. for reh'g). Also, we note that Amwest's complaint is not that it had no notice at all of the forfeiture proceeding; it is simply that it did not receive formal service of process. We conclude that Amwest received sufficient notice to satisfy the requirements of the Due Process Clause.

*Whittington,* 751 S.W.2d 493, 495 (Tex.1988).

We should not be understood to say that service against a bond surety is not necessary. Under the provisions of the Texas Family Code then in effect, each party whose rights, privileges, duties, or powers might have been affected by Ellen's motion to enforce was entitled to service. *See* Tex.Fam.Code Ann. § 14.31(d) (Vernon 1986).[4] Ellen may therefore have been statutorily obligated to give Amwest notice by the service of citation commanding it to appear. But, any failure to comply with a statute requiring service of process does not result in a judgment that is void. *See Elbar, Inc., v. Claussen*, 774 S.W.2d 45, 52–53 (Tex.App.—Dallas 1989, no writ) (a judgment in violation of a provision in the Texas Constitution is erroneous but not to the extent that it constitutes fundamental error; the trial court's jurisdictional power included the power to rule erroneously). We hold only that the failure of a surety on an appearance bond to receive service of process neither deprives the surety of due process nor deprives the trial court of jurisdiction over the surety's person, such that a forfeiture judgment against the surety is void.

In an effort to establish the court's plenary jurisdiction to vacate the July 17, 1989 judgment as late as March, 1991, Amwest next argues that the judgment against it was interlocutory and not final, so that the court retained jurisdiction to vacate it until a final judgment was entered. Amwest asserts that a final judgment of forfeiture cannot be entered against a surety on an appearance bond until a judgment has been entered against the bond's principal, in this case, Michael. Amwest also stresses that the forfeiture judgment was a default judgment, giving no rise to presumptions of finality.

We disagree. *Cf. Thomas v. DuBovy–Longo*, 786 S.W.2d 506, 507 (Tex.App.—Dallas 1990, n.w.h.) (a post-answer default judgment, in which a defendant answers but fails to appear when trial is set, enjoys a presumption of finality). Although we recognize that Amwest's signing the bond constitutes only an appearance and not an answer as such, once Amwest signed the appearance bond, the only proof Ellen needed to establish a prima facie case that the bond should be forfeited was Michael's failure to appear at the hearing on her motion for contempt. Michael's failure to appear, however, was not an extrinsic fact that Ellen needed to prove to the court, which could note the failure for itself. Thus, all the proof necessary to support a judgment of forfeiture was placed before the court; although the judgment was a default judgment, it was not based upon any implied admission created by Amwest's default. *See Thomas*, 786 S.W.2d at 507. For this reason, the general rule that default judgments do not enjoy a presumption of finality may not apply to judgments of forfeiture against sureties on appearance bonds.

In any case a bond forfeiture proceeding is ancillary to the main proceeding, but a judgment of forfeiture against the surety is considered a final judgment. That certainly is the rule in criminal cases, even when the surety on the appearance bond suffers a default judgment. *See, e.g., Bailout Bonding Company v. State*, 797 S.W.2d 275, *passim* (Tex.App.—Dallas 1990, pet. ref'd); *see also* Tex.Code Crim. Proc.Ann. art. 22.15 (Vernon 1989) (providing for a final judgment when the parties to a forfeiture proceeding do not appear). Indeed, in criminal cases the prosecution cannot proceed until the defendant does appear, either voluntarily or forcibly. To say that a final judgment cannot be rendered against a surety on an appearance bond until judgment is also rendered against the principal on the bond defeats the purpose of an appearance bond in the first place.[5] There is no discernible distinc-

---

4. *See now* Tex.Fam.Code Ann. § 14.314(b), (c), & (e) (Vernon Supp.1991).

5. In this sense, we do note a distinction between appearance bonds and most other types of bonds. "[O]rdinarily, *in the absence of default on the part of the principal* or an allegation of

fraud, collusion, or the like, ... sureties must leave the conduct of the case to their principal." *Lawyers Lloyds*, 152 S.W.2d at 1098 (emphasis added). Most bonds employed in court proceedings are conditioned upon the bond's principal prosecuting his cause to effect. *See, e.g.,*

tion between forfeiture proceedings arising in a civil context and those arising in a criminal context: although a forfeiture proceeding might arise in a criminal context, civil rules govern all proceedings in the trial court following the judgment nisi. *See Bailout Bonding Company*, 797 S.W.2d at 275 (citing TEX.CODE CRIM.PROC. ANN. art. 22.10 (Vernon 1989)). We conclude that the July 17, 1989 judgment would have been final for purposes of appellate review by applying the same civil rules that apply in determining our jurisdiction over judgments of forfeiture arising out of criminal cases. It follows that the July 17, 1989 judgment was also a final judgment for determining when the court's plenary jurisdiction expired.

There is no dispute that Amwest's motion to vacate could not have been considered timely as a motion for new trial or that, at the time that it was filed, the time for filing an appeal, either directly or by petition for writ of error to this Court, had lapsed. Amwest's final argument is that the court could have treated its motion to vacate as if it were a petition for bill of review.

▆▆▆ Amwest seems to rely on the general principle that a pleading is determined by its substance, not its form or caption. Nonetheless, a motion to vacate judgment must contain the requisites of a bill of review, or else the motion cannot be treated as such. *See Hicks v. First National Bank in Dalhart*, 778 S.W.2d 98, 99 (Tex. App.—Amarillo 1989, writ denied). The grounds upon which a bill of review can be

obtained are narrow because the procedure conflicts with the fundamental policy that judgments must become final at some point. Thus, a bill of review petitioner must ordinarily plead and prove: (1) a meritorious defense to the cause of action alleged to support the judgment, (2) that he was prevented from making by the fraud, accident or wrongful act of his opponent, (3) unmixed with any negligence of his own. *Transworld Financial Services Corporation v. Briscoe*, 722 S.W.2d 407, 407–08 (Tex.1987). Once a judgment has become final, there is no procedure for filing a special appearance to contest personal jurisdiction. After a court loses plenary power over its judgment, a judgment cannot be set aside by the trial court except by bill of review for sufficient cause. *See Blenkle v. Blenkle*, 674 S.W.2d 501, 502–03 (Tex.App.—El Paso 1984, no writ).[6] We conclude that Amwest cannot raise lack of personal jurisdiction (absent such a lack of notice that it rises to a lack of due process) by petition for bill of review, unless Ellen committed some fraud, accident or wrongful act that resulted in Amwest's being deprived of presenting that defense. Because we have already concluded that Amwest received notice sufficient to accord it due process, we hold that Amwest cannot raise lack of personal jurisdiction by petition for bill of review absent some fraud, accident or wrongful act on Ellen's part.

▆▆▆ Amwest argues that a default judgment is improper against a defendant who has not been served in strict compliance

---

*Pease*, 37 S.Ct. at 287; *cf.* TEX.R.APP.P. 46(a) (condition of cost bond). If the principal does not prosecute his cause to effect but instead abandons it, the surety is discharged from its obligation. Therefore, the adversary must usually first establish the liability of the principal before he can establish the liability of the surety. An appearance bond, however, is conditioned upon precisely that event that otherwise exempts a surety from having to leave the conduct of the case to its principal: the principal's default. Michael's appearance bond was conditioned "in the event he fails to appear before the court...." Therefore, one who proceeds against a surety on an appearance bond need not establish the principal's liability; he need establish only the principal's failure to appear to prosecute his cause.

6. We note that *Blenkle* involved an appellant who contended that the trial court did not have personal jurisdiction over him because he was a nondomiciliary who elected not to submit to jurisdiction in Texas. 674 S.W.2d at 503. The *Blenkle* Court expressly distinguished two ways in which a court acquires in personam jurisdiction over a party: (1) when the party is amenable to jurisdiction in Texas courts; and (2) when "notice provisions to the defendant meet constitutional due process requirements," 674 S.W.2d at 503. The appellant did not contest personal jurisdiction on the basis of a lack of notice offensive to due process. Consequently, *Peralta* does not affect the validity of the holding for which *Blenkle* is cited here.

with law, even if he has actual knowledge of the lawsuit. *Wilson v. Dunn,* 800 S.W.2d 833, 837 (Tex.1990). *Wilson,* however, was an appeal, not a bill of review proceeding. It may be that Ellen's failure to serve Amwest with formal process was a mistake on Ellen's part, but that does not end the inquiry. Ellen mailed a copy of her motion seeking forfeiture of the appearance bond to Amwest, and Amwest received it. Ellen also mailed a copy of the judgment of forfeiture, and Amwest does not argue that it did not receive that. Amwest knew of what was going on in time to appeal (and certainly to appeal by writ of error). Nothing that Ellen did prevented Amwest from timely raising any meritorious defenses that it might have had (including lack of formal service of process) in the procedurally appropriate manner. Amwest chose, however, to act only when the time to appeal had passed. One with an available appeal who fails to pursue that remedy is not entitled to seek relief by way of a bill of review. *Rizk v. Mayad,* 603 S.W.2d 773, 775 (Tex.1980). At least one of the elements essential to a petition for bill of review is lacking in Amwest's motion to vacate: the element that Ellen had to have done something that prevented Amwest from presenting any defenses earlier.

 If a trial court improperly grants a petition for bill of review and thereby effectively enters a void order granting an untimely motion for new trial, mandamus will lie. *See Yancey v. Jacob Stern & Sons, Inc.,* 564 S.W.2d 487, 490 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ); *see also Wear v. McCallum,* 119 Tex. 473, 33 S.W.2d 723, *passim* (1930). The court signed its judgment of forfeiture on July 17, 1989. By no later than January 17, 1990, the times to file a motion for new trial, perfect a direct appeal, or perfect an appeal by writ of error had all irrevocably expired. Amwest's February 20, 1990 motion to vacate cannot be considered a petition for bill of review; it is nothing more than an untimely motion for new trial. We conclude that, when the judge signed an order granting it and vacating the judgment of forfeiture, he abused his discretion by acting outside the court's plenary juris-

diction. We therefore conditionally grant Ellen's petition for writ of mandamus and direct Judge Koons to vacate his February 20, 1990 order staying execution of the judgment of forfeiture; to vacate his March 23, 1991 order vacating the judgment of forfeiture; and to reinstate the July 17, 1989 judgment of forfeiture.

We are confident that Judge Koons will comply with our order; the writ shall issue only if he does not.