**Opinion filed November 26, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00153-CV

_____

## IN THE INTEREST OF C.N.A., A CHILD

**On Appeal from the County Court at Law**

**Ector County, Texas**

**Trial Court Cause No. CC-3296-PC**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of C.N.A.'s mother and father.  The mother appeals.  We affirm.

In five of her six issues on appeal, the mother challenges the legal and factual sufficiency of the evidence to support termination.  The termination of parental rights must be supported by clear and convincing evidence.  TEX. FAM. CODE ANN. § 161.001 (West 2014).  To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could

have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

In this case, the trial court found that the mother had committed four of the acts listed in Section 161.001(1): those found in subsections (D), (E), (N), and (O). The trial court's findings under the respective subsections were that the mother had placed or allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being, that the mother had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being, that the mother had constructively abandoned the child, and that the mother had failed to comply with the necessary provisions of a court order.

The record shows that C.N.A. was removed from her parents' care when she was nineteen months old. The removal came about after a previous case involving the mother and C.N.A.'s three older brothers. In that case, the Department of Family and Protective Services determined that the mother had physically abused her oldest son, and in November 2012—when C.N.A. would have been fourteen months old—the mother "struck" one of her sons during an unsupervised visit. The mother ultimately relinquished her rights to her sons. C.N.A.'s subsequent removal was based upon allegations of medical neglect by the mother. The mother had allowed C.N.A.'s Medicaid to lapse and had not taken C.N.A. to follow-up visits with a pediatric cardiologist. The mother's firstborn child had died from a

heart defect, and it was believed at the time that C.N.A. had the same defect. It was later determined that C.N.A. had a heart murmur, not hypertrophic cardiomyopathy.

At the time of C.N.A.'s removal, her father had been convicted of the offense of assault family violence against the mother and was incarcerated. He remained incarcerated at the time of the final hearing in this case. C.N.A. was two years and seven months old at the time of the final hearing in this case. The mother told a conservatorship caseworker that the father was very abusive and hit her many times. However, based upon the date of C.N.A.'s birth, the mother continued a relationship with the father even after he was convicted of assaulting the mother.

Alexa Guin, a conservatorship caseworker, confirmed that the mother had been ordered by the trial court to participate in family services with the Department and that the mother had signed a family service plan. The required services included a psychological evaluation, individual counseling, parenting classes, a drug and alcohol assessment, and random drug testing. The mother was also ordered to obtain stable employment and stable housing. The undisputed evidence showed that the mother did not comply with the trial court's order. According to Guin, the mother failed several times to submit to drug testing, tested positive for cocaine about one month before the final hearing in this case, failed to complete the parenting classes, failed to participate in MHMR services, failed to finish the individual counseling, failed to obtain stable housing (seven different residences during this case), failed to obtain employment, and committed a felony while this case was pending. The mother testified that she had participated in some of the required services, but she agreed that she had not completed all of the services. She also admitted that she had used cocaine and "huffed paint" during the pendency of this case.

Furthermore, the mother was in and out of jail while this case was pending; she was in jail at the time of the final hearing. The record shows that the mother was put on probation in October 2013 for the unauthorized use of a motor vehicle. The mother committed another offense while on probation; she was arrested for the possession of drug paraphernalia and for the possession and use (inhalation or ingestion) of a volatile chemical. The mother's probation officer testified that, in February when the mother was pulled over for a traffic stop, she had silver spray paint "covering her mouth and nose area." The mother denied "huffing," but her speech was slurred. A methamphetamine pipe containing residue was found in the car.

C.N.A. was placed with her paternal aunt about one year prior to the final hearing, and she continued to live with that aunt at the time of trial. The aunt testified that she and C.N.A.'s grandmother had been the primary caretakers for C.NA. even before C.N.A. was removed from the mother's care. By all accounts, C.N.A. had developed a strong bond with her aunt and was thriving in the aunt's care. The aunt loves C.N.A. like her own and would like to adopt C.N.A. The aunt believed that termination of both parents' rights would be in the best interest of C.N.A. The guardian ad litem for C.N.A. also believed that it would be in C.N.A.'s best interest for the trial court to terminate the parental rights of both parents and to allow C.N.A. to eventually be adopted by her aunt. The Department felt that termination of both parents' rights would be in the child's best interest, and the Department's plan for C.N.A. was for the aunt to adopt her.

The Department produced clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the mother failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of C.N.A. The evidence showed that the mother was ordered to complete services but that the mother failed to complete her

4

services or comply with the trial court's orders. Section 161.001(1)(O) does not "make a provision for excuses" for a parent's failure to comply with the family service plan. *In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.) (quoting *In re T.N.F.*, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied)). The evidence also showed that C.N.A. had been in the Department's care for at least nine months and that she had been removed from the mother due to abuse or neglect. Thus, we hold that the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(O). *See id.* The mother's fourth issue on appeal is overruled.

Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address the mother's first, second, and third issues in which she challenges the sufficiency of the evidence to support the trial court's findings under Section 161.001(1)(D), (E), and (N). *See* TEX. R. APP. P. 47.1.

In the mother's fifth issue, she argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in C.N.A.'s best interest. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate

that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

We hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be in the best interest of C.N.A. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the child's relationships with the mother and the aunt, the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of the mother and of the aunt, the stability of the current placement, the programs available to assist the aunt, the plans for the child by the Department, the mother's drug use, the mother's physical abuse of C.N.A.'s siblings, the mother's criminal history, and the mother's failure to complete her court-ordered services, we hold that the evidence is both legally and factually sufficient to support the finding that termination of the mother's parental rights is in the best interest of C.N.A. *See id.* The trial court's finding as to best interest is supported by clear and convincing evidence. Accordingly, we overrule the mother's fifth issue on appeal.

In her final issue, the mother contends that the trial court erred when it denied her request to "invoke the Rule." *See* TEX. R. EVID. 614; TEX. R. CIV. P. 267. The record shows that, prior to any witness being called to testify at the final hearing, the mother asked the trial court to "invoke the Rule." The trial court overruled the mother's request, stating that the court "would prefer that they remain" because this case concerned a child and because the court was new to the case.

When the Rule is invoked, witnesses for both sides are to be sworn and removed from the courtroom so that they cannot hear the testimony of other witnesses. TEX. R. EVID. 614; TEX. R. CIV. P. 267. Some witnesses are exempt from the Rule, including (1) a party who is a natural person and the party's spouse, (2) an officer or employee who is designated as the representative of a party that is not a natural person, and (3) a person whose presence is shown by a party to be essential to the presentation of the cause. TEX. R. EVID. 614; TEX. R. CIV. P. 267. The Rule is mandatory; it provides that nonexempt witnesses "shall" be excluded upon request by any party. TEX. R. EVID. 614; *Elbar, Inc. v. Claussen*, 774 S.W.2d 45, 51 (Tex. App.—Dallas 1989, writ dism'd). The purpose of the Rule is to aid in the ascertainment of truth by preventing the testimony of one witness from influencing the testimony of another. *Posner v. Dallas Cnty. Child Welfare Unit of Tex. Dep't of Human Servs.*, 784 S.W.2d 585, 588 (Tex. App.—Eastland 1990, writ denied); *Elbar*, 774 S.W.2d at 51. The Rule "minimizes witnesses' tailoring their testimony in response to that of other witnesses and prevents collusion among witnesses testifying for the same side." *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 116 (Tex. 1999).

Because the Rule is mandatory, the trial court erred by overruling the mother's request to invoke the Rule. To be reversible error, however, the trial court's error must amount to such a denial of her rights that it probably caused the rendition of an improper judgment or prevented the mother from properly presenting the case to this court. TEX. R. APP. P. 44.1.

The record shows that five witnesses testified during the final hearing. The mother's probation officer was the first witness to testify and, thus, did not hear the testimony of other witnesses prior to testifying. The next witness was a former employee of the Department who testified about the prior case involving the mother and her sons and about the initial removal of C.N.A. The third witness to

testify was a Department supervisor, Derrick Valdez. Valdez was involved with C.N.A.'s removal, and his testimony centered on the circumstances involving the initial removal. Guin, a Department caseworker, testified next. Guin testified regarding things that occurred after C.N.A.'s removal, mainly the mother's failure to complete the family service plan. One of the Department employees would have been exempt from the Rule as the Department's representative. The final witness for the Department was C.N.A.'s aunt, who had been the placement for the child for most of the case and one of the child's caretakers prior to removal. The aunt's testimony related mainly to her relationship with C.N.A. and her desire to adopt. Allowing the aunt to remain in the courtroom and hear other witnesses' testimony was not so prejudicial as to have probably caused or been reasonably calculated to cause the rendition of an improper judgment. The only witness to testify after the Department rested was the mother, a party to the suit who was exempt from the Rule. Under the circumstances in this case, we cannot conclude that the trial court's error amounted to such a denial of the mother's rights that it probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1. The mother's sixth issue is overruled.

We affirm the trial court's order of termination.


JIM R. WRIGHT

CHIEF JUSTICE

November 26, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

8