Frank **SHIPMAN**, Plaintiff-Appellant,

v.

**CENTRAL GULF LINES, INC.,**
Defendant-Appellee.

No. 82–3410
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

July 11, 1983.

---

William G. Tabb, III, Elliot G. Snellings, New Orleans, La., for plaintiff-appellant.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Glenn G. Goodier, New Orleans, La., for defendant-appellee.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

PER CURIAM:

Plaintiff Frank Shipman, a merchant marine officer, brought Jones Act and unseaworthiness claims against Central Gulf Lines to recover for an injury sustained when a gantry crane on defendant's lash vessel, the S/S GREEN ISLAND, struck the back of his left foot.

The S/S GREEN ISLAND was fitted with the standard Morgan gantry crane, a four-legged crane that moved fore and aft on the deck of the vessel on railroad-type tracks; the crane was incapable of any lateral movement. The giant crane aboard the vessel was used to load and unload barges from its cargo hold in a LASH system, a concept in which dry cargo barges are loaded at points inland and brought to a staging area. Central Gulf Lines contracted with stevedore crews to perform unloading operations. The crane was operated by a stevedore; the ship's crew did not handle the crane.

On the night of June 23 and early morning of June 24, 1978, Shipman, who had been licensed as a second officer since 1977, was the ship's port relief officer responsible for the integrity of the lash vessel and its anchorage. His general responsibilities were to oversee cargo unloading and to insure the safety of all those on board during the unloading operation, including his own safety.

At trial Shipman testified that he had been working with the crane for five and one-half hours, observing its operations. The crane stopped momentarily. When he moved closer to the crane to observe its operation, the crane moved and caught his left foot in its overhang. Shipman claimed that he didn't have any warning that the crane was starting and that he didn't see a white line or flashing lights or hear any noise, including the release of brakes or warning bells. At trial he proceeded on theories that the inoperative warning systems, constituting both negligence and unseaworthiness, caused his injury.

In response to interrogatories, the jury found defendant negligent, but did not find the vessel unseaworthy. The jury awarded Shipman $10,000 in general damages. Because Shipman was found 75% contributorily negligent, his general damage award was automatically reduced by the trial court to $2,500.00 plus costs and interests.

The district court denied Shipman's motion for a new trial challenging the jury's findings. On appeal Shipman contends that the jury's finding of seaworthiness is not supported by the evidence, that the jury's finding of contributory negligence is not supported by the evidence, that the damage award is inadequate, and that defendant's closing arguments prejudiced the jury.

I. *Sufficiency of Evidence*

Shipman failed to move for a directed verdict at the close of all the evidence. It is well-settled in this Circuit that in the absence of a motion for a directed verdict at the close of all the evidence, the sufficiency of the evidence to support a jury verdict is not reviewable on appeal. *Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 297 (5th Cir.1978). Appellate inquiry is limited to whether there was any evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a "manifest miscarriage of justice." *Id.*

Since Shipman failed to move at the close of all the evidence for a directed verdict on either the Jones Act or unseaworthiness issues, this Court's inquiry would normally be limited to the "any evidence" or "plain

error" standard. Shipman did, however, raise the sufficiency issue for the first time in a motion for a new trial. Nevertheless, this motion will not reopen the question foreclosed by the failure to move for a directed verdict. *Id.* Under these circumstances, this Court may inquire only into whether the trial court abused its discretion in overruling the motion for a new trial. *Id.* at 297–98. The proper standard of review is whether there is an "absolute absence of evidence to support the jury's verdict." *Id.* at 298. A review of the record reveals that Shipman's insufficiency of the evidence contentions on both the unseaworthiness and Jones Act contributory negligence issues are meritless.

### A. Unseaworthiness

■■■ General maritime law imposes an absolute duty on a ship owner to provide a seaworthy vessel, that is, a vessel and appurtenances reasonably safe for their intended use. *Ceja v. Mike Hooks, Inc.*, 690 F.2d 1191, 1193 (5th Cir.1982). Shipman contends that the sole cause of his injury was the lack of a proper audible warning device, which rendered the vessel unseaworthy. Shipman argues, in particular, that discontinuance of the use of the siren, which he described as the critical advance warning system that the crane was operating, rendered the vessel unseaworthy. There is evidence in the record, however, to support a finding of seaworthiness, including evidence that the vessel was sufficiently equipped with other warning devices, including wide stripes painted on the deck which demarcated a danger zone. In addition, defendant used both bells and four flashing strobe lights on the legs of the crane as part of the fixed warning system when the crane was in operation. The crane's cab operator, at his discretion, could operate a siren system with a foot pedal, but the siren system was not in use because residents in Luling, Louisiana, had complained of the siren's noise. Shipman, who testified that he had been told that the bells had been shut down, was the only one who claimed that the bells weren't working. A port engineer who inspected the vessel after the incident testified that the bell system was operating properly. He also testified that a machinery noise from the release of the brakes and the lowering of the guides is audible to a person standing near the crane. As an additional safety measure, defendant used crews of stevedores to observe the track and movement of the crane during unloading operations. Two stevedores who walked beside the crane had walkie-talkies to communicate with the crane operator. Given that there was evidence supporting the finding of seaworthiness, the district court did not abuse its discretion in denying the motion for a new trial on that basis.

### B. Contributory Negligence

■■■ In order to support a jury finding of contributory negligence, the seaman must have had a duty to act or refrain from acting. *Bobb v. Modern Products Inc.*, 648 F.2d 1051, 1056–57 (5th Cir.1981). While a seaman's duty to protect himself is slight, the duty does exist. *Id.; Robinson v. Zapata Corp.*, 664 F.2d 45, 48 (5th Cir.1981). A seaman would not be contributorily negligent merely because he used an unsafe tool or appliance or proceeded in an unsafe area of the ship. *Ceja*, 690 F.2d at 1194–95. Where it is shown, however, that there existed a safe alternative available to him, of which he knew or should have known, a seaman's choice of an unsafe course of action can properly be considered in determining whether he was negligent. *Id.* at 1195, citing *Robinson v. Zapata Corp.*, 664 F.2d 45, 49 (5th Cir.1981) (where seaman knew of "several simple ways"—well-known and readily available to him—to avoid the unsafe course created by a lack of proper equipment, he had the duty to follow the safe course of conduct) and *Hussein v. Isthmian Lines, Inc.*, 405 F.2d 946, 949–50 (5th Cir.1968) (where seaman has tools close at hand which could safely perform a task, the seaman has a duty to use them). There was testimony indicating that Shipman knew that he was within the danger zone when his injury occurred, and that he could have inspected the crane by using other methods that were safe, well-known, and readily

available to him. Relevant evidence on this issue included Shipman's prior experience on similar lash vessels and loading operations; Shipman's own testimony that he knew about safe methods of contacting the crane operator, such as having the stevedores use walkie-talkies or using a telephone located on the leg of the crane; his awareness of normal safety precautions, including his statement that everyone involved in the cargo operations knew to stay out of the way of the crane; his statement that he knew bells were inoperative when he came on duty, but that he knew that "[y]ou stay out of the way of the crane, weather (sic) the sirens or bells work or not."

█ Shipman's own testimony indicated that during normal operation of the crane, if a person stays outside of the skirt, an overhang that sticks out about three feet from the side of the crane, he cannot be struck by the crane. Furthermore, Shipman admitted that he must have let his foot come closer to the crane than the edge of the skirt and that he walked up to the crane because he made a mistake in judging the crane's movement. There was additional evidence that warning systems were operating, including bells and strobe lights,[1] that there was a wide stripe painted on the deck demarcating the danger zone, and that the crane itself made considerable noises when it started.

There is clearly evidence to support the jury's finding that Shipman was contributorily negligent. A review of the record does not indicate the existence of any plain error which could result in a manifest miscarriage of justice on the contributory negligence issue. Moreover, the trial court did not abuse its discretion in denying the motion for a new trial in that there was no absolute absence of evidence of Shipman's contributory negligence.

## II. *Inadequate General Damages*

█ Shipman asserts that the general damage award of $10,000 is inadequate.

Specifically, he claims that the jury failed to properly account for his past and future pain and suffering as well as past and potential lost earnings. Because the size of the award is generally a question of fact, this Court is exceedingly hesitant to overturn the decision of the jury and the trial judge who approved the award. *Shows v. Jamison Bedding, Inc.,* 671 F.2d 927, 934 (5th Cir.1982). Thus, a refusal by a trial judge to grant a new trial as to the amount of damages awarded by a jury is reversible for abuse of discretion only where the jury's verdict is without factual support in the record. *C.A. May Marine Supply Co. v. Brunswick Corp.,* 649 F.2d 1049, 1053 (5th Cir.), *cert. denied,* 454 U.S. 1125, 102 S.Ct. 974, 71 L.Ed.2d 112 (1981). In the instant case, the jury's damage award was supported by the evidence before it, including evidence that (1) Shipman's medical expenses were free at the U.S. Public Health Service Hospital, (2) no surgery was performed and none was indicated, (3) Shipman was fit for service four and one-half months after the accident, (4) his injury was not severe (circulation and sensation were intact), (5) he suffered no atrophy or loss of motion in his foot, and (6) he continued to work without any diminished income after the injury.

Even if the jury, in awarding $10,000, accounted for Shipman's lost earnings for a five-month disability at his suggested amount of $5,400 ($300.00 per week for the eighteen weeks he claims he was unfit for duty), and attributed the balance to pain and suffering, the award cannot be said to be inadequate. There was no positive evidence of potential lost earnings or future pain and suffering. Similarly, there was no evidence that Shipman suffered excruciating agony. At most, there was expert testimony that he might experience discomfort in cold weather in the future. Moreover, Shipman was unable to verify a claim that he visited a doctor in South Africa because of the pain. In short, the evidence indicated that Shipman suffered a minor injury

---

**1.** The accident occurred at 4:30 a.m. Shipman testified that the reflecting lights were working at the time of the accident but that he could not see them from the place where he was injured.

creating no functional disability. Because Shipman failed to demonstrate that his slight disability will substantially impair his work or future earning capacity, the trial judge did not abuse his discretion in denying a motion for a new trial on this issue.

### III. *Improper Closing Argument*

 Shipman contends for the first time on appeal that defendant's closing argument to the jury was prejudicial in that the argument contained errors of fact which influenced the jury. Nevertheless, he failed to object to the closing argument at trial. This Court will consider errors to which no objections were made at trial but will exercise this power only in exceptional cases where the interest of substantial justice is at stake. *Edwards v. Sears Roebuck and Company,* 512 F.2d 276, 286 (5th Cir. 1975). To reverse, this Court must find plain error. *Schleunes v. American Casualty Co.,* 528 F.2d 634, 638 (5th Cir.1976). Shipman contends that defendant's closing argument was prejudicial because defense counsel (1) dwelled on a fact which was not proven—the existence of a white line at the time of the accident,[2] (2) referred to Shipman as "being unbelievable," and (3) characterized Shipman and his physician derogatorily. These allegations do not rise to the level of plain error. The record does not indicate that counsel's closing argument so far exceeded proper bounds or was so prejudicial as to unduly influence the jury's verdict and require a new trial.

The district judge did not abuse his discretion in denying Shipman's motion for a new trial on the foregoing issues. Nor is there any plain error in the closing argument that would require a new trial.

The judgment of the district court is affirmed.

AFFIRMED.

---

2. Shipman argues that the only evidence as to the existence of the line came from Charles Wolff, Vice-President of defendant's Marine Division in 1978.