NUMBER 13-08-00009-CV


 COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


 CORPUS CHRISTI - EDINBURG


 

REYNALDO GONZALEZ, Appellant,


v.
 


GREAT LAKES DREDGE & 

DOCK COMPANY, Appellee.

 


On appeal from the 206th District Court

of Hidalgo County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Yañez and Wittig (1) 

Memorandum Opinion by Justice Don Wittig

 

 Appellant, Reynaldo Gonzalez, tried his Jones Act and other maritime claims to a
jury. See 46 U.S.C. § 688. The jury found appellee, Great Lakes Dredge & Dock
Company, 25 percent negligent and found appellant 75 percent negligent. The trial court
accordingly reduced the damage finding of $500,000 to $125,000. Appellant asserts the
trial court erred by not properly applying "the rule" (Tex. R. Civ. P. 267) to a critical defense
witness and that the evidence of contributory negligence was not legally sufficient. See
Tex. R. Civ. P. 267. We affirm.

 I. The Rule

 At the conclusion of appellant's case, his counsel, for the first time, invoked the
rule. See Tex. R. Civ. P. 267; Tex. R. Evid. 613. After the defense witness, Lanny
Lawrence, testified on direct examination, appellant's counsel began his cross examination
and elicited testimony by Lawrence indicating that he had some discussions about prior
court testimony with defense counsel and the corporate representative, Enrique Elizondo. 
Appellant requested, and was afforded, a hearing outside the presence of the jury. During
the hearing, Lawrence, Elizondo, and defense counsel were questioned by appellant's
counsel and the court concerning the apparent violation of the rule.

 A. Standard of Review

 We review the trial court's actions in enforcing the rule by an abuse of discretion
standard. Drilex Sys. v. Flores, 1 S.W.3d 112, 117-18 (Tex. 1999). When the rule is
violated, the trial court may, taking into consideration all of the circumstances, allow the
testimony of the potential witness, exclude the testimony, or hold the violator in contempt. 
Id. (citing Tex. R. Civ. P. 267(e); Triton Oil & Gas Corp. v. E.W. Moran Drilling Co., 509
S.W.2d 678, 684 (Tex. Civ. App.-Fort Worth 1974, writ ref'd n.r.e.)).

B. Analysis

 Appellant argues that both defense counsel's discussion with Lawrence and
counsel's failure to warn Elizondo that the rule had been invoked, violated the rule. 
Counsel are obligated to ensure compliance with the rule. See Drilex, 1 S. W. 3d at 120. 
While the record reflects some conversations between Lawrence, and Elizondo, these
occurred in part before the rule was invoked. Elizondo did not recall discussing any
specific testimony. "I don't remember talking specific about testimonies [sic] and stuff like
that." Though the record supports appellant's contention that defense counsel, including
all four attorneys, did not properly admonish Elizondo, appellant does not point to any
specific revelation by Elizondo that affected his case.

 Appellant next argues that Lawrence materially altered his testimony in three ways. 
Lawrence was appellee's vice president for risk management and special projects. 
Although not an eyewitness, Lawrence spoke with appellant after his fall down a shipboard
stairwell. According to appellant's argument, in his deposition Lawrence testified that he
did not believe the paint on the ladder was non-skid paint. At trial, he was "certain" the
paint was non-skid. However, the record reveals a more ambiguous deposition answer:
"I don't know if the paint has non-skid in it or not," and indicated that he did not expect the
paint to have non-skid in it. Lawrence explained that prior to trial he actually touched the
painted surface and felt the non-skid material.

 Next, appellant charges Lawrence with altering his testimony concerning the
presence of diamond plating on the stairway. Appellant contends that, at his deposition,
Lawrence testified that the diamond plating was worn away. At trial, however, Lawrence
said the plating was intact. In his deposition, Lawrence stated: "It--looks like the high spots
are worn off of the diamond--the diamond--." At the time of this testimony, Lawrence was
referring to a photograph of the stairs and not the actual stairs. At trial, Lawrence denied
that the diamond plate was "worn off" or had lost its effectiveness. He did agree with
counsel that if the top sharp edge of the plating were removed, it is not as effective at
preventing slips. 

 Appellant does not inform us how the semantic differences in play were caused by
any alleged violation of rule 267. Appellant's counsel also noted that he did not need
Lawrence's testimony on this subject noting "you can see it right there in the picture. . . ."

 Third, appellant charges that Lawrence altered his testimony regarding appellant's
"fall," from "slipping," in his deposition, to "mis-stepping" (2) in his trial testimony. In his
deposition Lawrence was asked:

 Q. Okay. Now what's the first thing you remember hearing about Mr.
Gonzalez's injury?


 A. Him just saying that he had hurt his arm.


 Q. Okay. And in what fashion?


 A. By slipping down stairs.


At trial, Lawrence was questioned about some discussions with one of the attorneys for the
defense, that appellant's counsel "found very, very interesting. I thought you told this jury
that Reynaldo told you that he miss stepped [sic]. Did you testify to that?" Lawrence
replied, "I did." Appellant's trial counsel pointed out that Lawrence's own hand-written report
from the day of the accident indicated that Gonzalez's "[f]oot slipped while stepping down."

 Finally, appellant further points out that Lawrence testified that, during his
conversations with other witnesses, he learned of specific testimony Gonzalez gave at trial. 
However, with one exception, Lawrence denied learning any information that he did not
have before. The only new information admittedly gleaned was Gonzalez's testimony that
a co-worker had shown up drunk. Appellant concludes that without Lawrence's testimony,
there would have been no dispute that appellant slipped on a negligently maintained
stairwell and was injured as a result.

 In support of his argument, appellant cites Harris, a criminal case. Harris v. State,
122 S.W.3d 871, 882-83 (Tex. App.-Fort Worth 2003, pet. ref'd). Harris explains a two-step
analysis to ascertain whether a trial court has abused its discretion in allowing testimony by
a witness who has violated the rule. Id. The first step of the analysis is to determine
whether the witness was (1) a person who was not intended to be called to testify and who
was not connected to the case-in-chief, but has become a necessary witness; or (2) a
person who had been sworn or listed as a witness in the case and either heard or discussed
another's testimony. Id. If the witness had "personal knowledge of the offense and was
clearly anticipated as a witness," the second step of the analysis requires the court to
determine whether the witness actually conferred with or heard the testimony of another
witness, and whether the witness's testimony contradicted the testimony of a witness he
actually heard from the opposing side, or corroborated the testimony of another witness he
actually heard from the same side on a question of fact bearing upon the issue of guilt or
innocence. Id. If both of the above criteria are met, then the trial court abused its discretion
by allowing the testimony of the witness. Id.

 Appellant correctly points out that: "[t]he premise underlying the rule is that the truth
is more likely to be reached by presenting the Jury each witness['s] unalloyed, independent
version of an occurrence uncolored by previous testimony in the trial." See Franklin v.
State, 733 S.W.2d 537, 540 (Tex. App.-Tyler 1985, pet. ref'd). Franklin goes on to say:
"Even the most righteous truthteller may be unconsciously influenced. And to allow each
succeeding witness to harmonize his story with those who precede him would undermine
the test of cross-examination." Aside from again being a criminal case, Franklin is
distinguishable on the facts because in that case the two defense alibi witnesses excluded
had been in the courtroom and actually heard the officer's critical testimony concerning both
the identification of appellant and the time period within which the offenses had occurred. 
Id. at 538. The alibi witnesses could then tailor their own testimony knowing the critical
evidence.

 Appellant argues that Lawrence tailored his testimony to respond to Gonzalez's and
Hervey Martinez's eye witness testimony. He cites several cases, including Elbar, Inc. v.
Claussen, 774 S.W.2d 45, 51 (Tex. App.-Dallas 1989, writ dis'm), which provides that,
"[r]ule 614 of the Texas Rules of Civil Evidence, commonly referred to as 'the rule,' provides
for the exclusion of witnesses from the courtroom so that they cannot hear and be
influenced by the testimony of other witnesses." Id. "Sequestration minimizes witnesses'
tailoring their testimony in response to that of other witnesses and prevents collusion among
witnesses testifying for the same side." Drilex Sys., 1 S.W.3d at 116. Drilex also observes:
"A violation of the Rule occurs when a nonexempt prospective witness remains in the
courtroom during the testimony of another witness, or when a nonexempt prospective
witness learns about another's trial testimony through discussions with persons other than
the attorneys in the case or by reading reports or comments about the testimony." Id. at
117.

 Appellant concludes that Lawrence's actions directly violated the rule and there is no
question that Gonzalez's testimony influenced Lawrence. However, appellant fails to show
whether or not Gonzalez's trial testimony differed from his deposition testimony, which was
known to Lawrence. Appellant does not point to a single material trial statement by
Gonzalez or Martinez that was somehow made known to Lawrence, who in turn changed
his testimony based upon that testimony. The record reveals that the only new information
Lawrence learned was from defense co-counsel, who picked up Lawrence at the airport and
discussed the case with the witness before the rule was invoked. The new information
concerned the intoxicated state of co-worker Tim Riehl. (3)

 In response to appellant's contentions, appellee first notes that appellant waived any
alleged error by proceeding after the court's hearing on the matter without first obtaining a
ruling. After the hearing, appellant's trial counsel did not renew his objection and stated he
was ready to proceed. The most likely inference would be that appellant's counsel was
satisfied that no significant rule infraction had occurred. To preserve error, a party must
secure a ruling, explicit or implicit, or if the court refuses to rule, object to the refusal. See
Tex. R. App. P. 33.1(a)(1)(A), (B)(2)(A), & (B). While appellee's challenge is not without
merit, we will nevertheless address the merits of the issue.

 Appellee argues that under the standard of review, abuse of discretion, no abuse has
been shown. Appellee cites a number of cases where the trial court's decision to either
exclude or allow a witness to testify was upheld. One case, Bishop, demonstrated
reversible error for the exclusion of a witness under the rule. Bishop v. Wollyung, 705
S.W.2d 312, 314 (Tex. App.-San Antonio 1986, writ ref'd, n.r.e.) (holding that Bishop's wife
should not be excluded from the proceedings on retrial because she was a party in interest). 
 More in point than this proposition of law is our holding in Weeks. See Weeks v. Heinrich,
447 S.W.2d 688, 697 (Tex. Civ. App.-Corpus Christi 1969, writ ref'd n.r.e.). There,
appellants showed that two witnesses testified they met with appellee and his counsel and
the latter talked to them about their testimony. Id. The rule had been invoked, but neither
of the witnesses had been sworn or heard any of the testimony at the time of the meeting.
Id. Appellants were allowed to question the two witnesses and to develop the
circumstances surrounding the meeting, both on bill of exception, and thereafter in the
presence of the jury. Id. The trial judge had the discretionary authority to permit the
testimony or to exclude it. Id. The Weeks appellants did not demonstrate abuse of
discretion in admitting or refusing to strike the testimony. Id. (citing Tex. R. Civ. P. 267;
Sw. Bell Tel. Co. v. Johnson, 389 S.W.2d 645, 648 (Tex. 1965); Ins. Co. of N. Am. v.
Parker, 434 S.W.2d 159, 161 (Tex. Civ. App.-Tyler 1968, no writ)). 

 Appellee aptly points out that the trial court went to considerable lengths to ascertain
whether the letter and spirit of rule 267 had been adhered to. She conducted an extensive
hearing out of the presence of the jury. She asked a number of questions to counsel,
Elizondo, and Lawrence. It was the trial judge, not appellant's counsel, whose inquiry
brought out the fact that Lawrence apparently had not heard before the trial that Riehl
showed up for work intoxicated. However, as we noted above, this occurred before the rule
was invoked. Appellant's counsel was afforded ample opportunity to question all
concerned, and seemed to acquiesce to the further trial testimony of Lawrence. 

 The trial judge was faced with the same question we face today. When counsel
changes a question from "What's the first thing you heard?" to "Did you testify to that?" is
a witness expected to answer in the exact same language? Is there a significant difference
between a mis-step and a slip, or as appellant's counsel questioned Gonzalez, about the
"fall down the stairs?" At one point Gonzalez testified: "I only slipped and I don't know how
things happened because it was a matter of seconds." There were variations in testimony
by both Gonzalez and Lawrence. At least one appellate criminal opinion held that we must
presume that the court has properly exercised its discretion until the contrary is shown.
Tijerina v. State, 460 S.W.2d 123, 124 (Tex. Crim. App. 1970).

 In addition to the problem of semantics, several difficulties face appellant's attempt
to show an abuse of discretion. Lawrence had not been previously sworn as a witness or
admonished by the trial court. We do find fault in appellee's counsel's failure to admonish
the witness as instructed by the court. Lawrence was already familiar with the prior
testimony of Gonzalez, and others, whose depositions were previously taken. Lawrence
was, after all, a company vice-president and risk manager. Unless Gonzalez changed his
prior deposition testimony at trial, which is not contended, then Lawrence was already
familiar with appellant's contentions. Lawrence had revisited the scene of the fall and could
have refreshed his recollection of the particulars, such as the presence of non-skid paint. 
Lawrence spoke with counsel, which is permissible, and learned of the only new factor, the
intoxication of Riehl, before the rule was invoked. Lawrence was not in the courtroom
during the prior testimony. Moreover, even if Lawrence changed his testimony, it does not
necessarily follow that the change was due to a rule violation. (4) All factors that appellant
argues to suggest he changed his testimony were presented to the jury, who were charged
to weigh Lawrence's credibility. The record does not otherwise distinguish between what
Lawrence knew prior to his conversation with Elizondo, and what, if anything, he may have
learned from Elizondo. Nor does the record clearly differentiate between what Lawrence
may have discussed before the rule was invoked and what may have been discussed after
the rule was invoked. And finally, as appellee points out, the trial judge conscientiously and
painstakingly addressed the situation presented to her.

 The trial court, in the exercise of judicial discretion, must determine whether the
witness's testimony will be received. Johnson, 389 S.W.2d at 648 (holding that the mere
fact or circumstance that a trial judge may decide a matter within his discretionary authority
in a manner different from what an appellate judge would decide if placed in a similar
circumstance does not demonstrate that an abuse of discretion has occurred). We
conclude that appellant has not demonstrated that the trial judge abused her discretion. 
See Drilex Sys., 1 S.W.3d at 117 (stating that when the rule is violated, the trial court may,
taking into consideration all of the circumstances, allow the testimony of the potential
witness, exclude the testimony, or hold the violator in contempt). We overrule appellant's
first issue.

 II. Legal Sufficiency

 In his second issue, appellant argues the evidence is insufficient to support the
contributory negligence finding of the jury. He argues that a seaman's conduct is negligent
only when there is a safer alternative available which the seaman knows, or should have
known, and nevertheless proceeded with the unsafe choice, citing Shipman v. Central Gulf
Lines, Inc., 709 F.2d 383, 386 (5th Cir.1983). More accurately, Shipman holds that in order
to support a jury finding of contributory negligence, the seaman must have had a duty to act
or refrain from acting. Id. While a seaman's duty to protect himself is slight, the duty does
exist. (5) Id. A seaman would not be contributorily negligent merely because he used an
unsafe tool or appliance or proceeded in an unsafe area of the ship. Id. "Where it is
shown, however, that there existed a safe alternative available to him, of which he knew or
should have known, a seaman's choice of an unsafe course of action can properly be
considered in determining whether he was negligent." Id.

 Appellant also argues from Gautreaux v. Scurlock Marine, 107 F.3d 331, 339 (5th
Cir. 1997). Gautreaux is inaccurately cited for the proposition that a seaman does not have
a duty to find the safest way to perform his work. More accurately, the case holds that a
seaman is obligated under the Jones Act to act with ordinary prudence under the
circumstances. Id.

 The circumstances of a seaman's employment include not only his reliance
on his employer to provide a safe work environment but also his own
experience, training, or education. The reasonable person standard,
therefore, and a Jones Act negligence action becomes one of the reasonable
seaman in like circumstances. To hold otherwise would unjustly reward
unreasonable conduct and would fault seamen only for their gross negligence, which was not the contemplation of Congress.


 Id. (citations omitted).

 A. Standard of Review

 For the Jones Act, both the burden of proof and the standard of appellate review is
less stringent than under the common law. Maritime Overseas Corp. v. Ellis, 971 S.W.2d
402, 406 (Tex. 1998) (citing Texas & Pac. Ry. v. Roberts, 481 S.W.2d 798, 800 (Tex.
1972)). As with the law on causation, the FELA standard of appellate review applies in
Jones Act cases. Id. The purpose of the Jones Act standard of review is to vest the jury
with complete discretion on factual issues about liability. Id. Once the appellate court
determines that some evidence about which reasonable minds could differ supports the
verdict, the appellate court's review is complete. Id. Essentially, a Texas court of appeals
may not conduct a traditional factual sufficiency review of a jury's liability finding under the
Texas "weight and preponderance" standard; rather we must apply the less stringent federal
standard of review. Id. 

 B. Analysis

 Appellant argues that the only witness to the accident, Martinez, did not indicate any
contributory negligence on appellant's part. Martinez heard no criticism of appellant's
negotiation of the stairwell. Appellant further argues that had the trial court properly
excluded Lawrence's testimony, no evidence would support the adverse jury finding. "A
finding of contributory negligence without Lawrence's testimony is 'mere conjecture and
speculation.'" However, we have already held the trial court did not abuse her discretion
by admitting Lawrence's testimony.

 Appellant worked on the vessel in question from 1998 to 2005. He was intimately
familiar with his workplace and had traversed the stairwell in question hundreds of times. 
If indeed the paint on the stairs lacked non-skid material, as a watch engineer appellant had
authority, when the ship was underway, to address and repair the unsafe condition. 
Appellant himself was unsure how the accident happened, although he testified the stairs
were clean and dry and, if there was any water present, he brought it in on his shoes. The
vessel was not on the high seas or underway when the accident occurred. The vessel was
stationary and the seas calm. Appellant testified that there was an alternate route available,
had the need arisen. While appellant testified that he slipped, he told a physician that he
"lost his footing." In Lawrence's testimony, appellant was quoted as saying he "miss
stepped [sic]." Appellant's own lawyer described the incident as a "fall." Additionally, the
jury was furnished with a photo of the stairwell, and as appellant's trial counsel pointed out,
the jury could see for themselves the condition of the stairwell. Finally, the vessel was
subject to regular Coast Guard inspection and they had not noted material defects.

 C. Conclusion

 Appellate inquiry is limited to whether there was any evidence to support the jury's
verdict, irrespective of its sufficiency, or whether plain error was committed which, if not
noticed, would result in a "manifest miscarriage of justice." Shipman, 709 F.2d at 385. No
plain error is argued or apparent. We find that there is some evidence of contributory
negligence about which reasonable minds could differ. See Maritime Overseas Corp., 971
S.W.2d at 406. 

 We overrule appellant's second issue. The judgment of the trial court is affirmed.

 

 

 

 DON WITTIG,

 Justice

Delivered and filed

the 24th day of June, 2010. 


 
1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of
Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon Supp. 2004).
2. The official transcript used the term "miss stepping," illustrating the problem with semantics.
3. There is no indication that Riehl's intoxication, vel non, played any part in appellant's fall.
4. A classical violation of logic occurs when it is argued that because a event follows another event,
that the first caused the second. "Propterea quod ergo propter quod."
5. This "slight duty" concept was heightened in later cases. See e.g., Gautreaux v. Scurlock Marine,
107 F.3d 331, 339 (5th Cir. 1997) (discussed infra).