

# NUMBER 13-08-00009-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

REYNALDO GONZALEZ, **Appellant,**

**v.**

GREAT LAKES DREDGE &
DOCK COMPANY, **Appellee.**

---

### On appeal from the 206th District Court
### of Hidalgo County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Wittig[1]
Memorandum Opinion by Justice Don Wittig**

Appellant, Reynaldo Gonzalez, tried his Jones Act and other maritime claims to a

jury. *See* 46 U.S.C. § 688. The jury found appellee, Great Lakes Dredge & Dock

Company, 25 percent negligent and found appellant 75 percent negligent. The trial court

---

[1] Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon Supp. 2004).

accordingly reduced the damage finding of $500,000 to $125,000. Appellant asserts the trial court erred by not properly applying "the rule" (TEX. R. CIV. P. 267) to a critical defense witness and that the evidence of contributory negligence was not legally sufficient. *See* TEX. R. CIV. P. 267. We affirm.

## I. The Rule

At the conclusion of appellant's case, his counsel, for the first time, invoked the rule. *See* TEX. R. CIV. P. 267; TEX. R. EVID. 613. After the defense witness, Lanny Lawrence, testified on direct examination, appellant's counsel began his cross examination and elicited testimony by Lawrence indicating that he had some discussions about prior court testimony with defense counsel and the corporate representative, Enrique Elizondo. Appellant requested, and was afforded, a hearing outside the presence of the jury. During the hearing, Lawrence, Elizondo, and defense counsel were questioned by appellant's counsel and the court concerning the apparent violation of the rule.

### A. Standard of Review

We review the trial court's actions in enforcing the rule by an abuse of discretion standard. *Drilex Sys. v. Flores*, 1 S.W.3d 112, 117-18 (Tex. 1999). When the rule is violated, the trial court may, taking into consideration all of the circumstances, allow the testimony of the potential witness, exclude the testimony, or hold the violator in contempt. *Id.* (citing TEX. R. CIV. P. 267(e); *Triton Oil & Gas Corp. v. E.W. Moran Drilling Co.*, 509 S.W.2d 678, 684 (Tex. Civ. App.–Fort Worth 1974, writ ref'd n.r.e.)).

### B. Analysis

Appellant argues that both defense counsel's discussion with Lawrence and counsel's failure to warn Elizondo that the rule had been invoked, violated the rule.

2

Counsel are obligated to ensure compliance with the rule. *See Drilex*, 1 S. W. 3d at 120. While the record reflects some conversations between Lawrence, and Elizondo, these occurred in part before the rule was invoked. Elizondo did not recall discussing any specific testimony. "I don't remember talking specific about testimonies [sic] and stuff like that." Though the record supports appellant's contention that defense counsel, including all four attorneys, did not properly admonish Elizondo, appellant does not point to any specific revelation by Elizondo that affected his case.

Appellant next argues that Lawrence materially altered his testimony in three ways. Lawrence was appellee's vice president for risk management and special projects. Although not an eyewitness, Lawrence spoke with appellant after his fall down a shipboard stairwell. According to appellant's argument, in his deposition Lawrence testified that he did not believe the paint on the ladder was non-skid paint. At trial, he was "certain" the paint was non-skid. However, the record reveals a more ambiguous deposition answer: "I don't know if the paint has non-skid in it or not," and indicated that he did not expect the paint to have non-skid in it. Lawrence explained that prior to trial he actually touched the painted surface and felt the non-skid material.

Next, appellant charges Lawrence with altering his testimony concerning the presence of diamond plating on the stairway. Appellant contends that, at his deposition, Lawrence testified that the diamond plating was worn away. At trial, however, Lawrence said the plating was intact. In his deposition, Lawrence stated: "It—looks like the high spots are worn off of the diamond—the diamond—." At the time of this testimony, Lawrence was referring to a photograph of the stairs and not the actual stairs. At trial, Lawrence denied that the diamond plate was "worn off" or had lost its effectiveness. He did agree with counsel that if the top sharp edge of the plating were removed, it is not as effective at

3

preventing slips.

Appellant does not inform us how the semantic differences in play were caused by any alleged violation of rule 267. Appellant's counsel also noted that he did not need Lawrence's testimony on this subject noting "you can see it right there in the picture. . . ."

Third, appellant charges that Lawrence altered his testimony regarding appellant's "fall," from "slipping," in his deposition, to "mis-stepping"[2] in his trial testimony. In his deposition Lawrence was asked:

Q.     Okay. Now what's the first thing you remember hearing about Mr. Gonzalez's injury?

A.     Him just saying that he had hurt his arm.

Q.     Okay. And in what fashion?

A.     By slipping down stairs.

At trial, Lawrence was questioned about some discussions with one of the attorneys for the defense, that appellant's counsel "found very, very interesting. I thought you told this jury that Reynaldo told you that he miss stepped [sic]. Did you testify to that?" Lawrence replied, "I did." Appellant's trial counsel pointed out that Lawrence's own hand-written report from the day of the accident indicated that Gonzalez's "[f]oot slipped while stepping down."

Finally, appellant further points out that Lawrence testified that, during his conversations with other witnesses, he learned of specific testimony Gonzalez gave at trial. However, with one exception, Lawrence denied learning any information that he did not have before. The only new information admittedly gleaned was Gonzalez's testimony that a co-worker had shown up drunk. Appellant concludes that without Lawrence's testimony, there would have been no dispute that appellant slipped on a negligently maintained

---

[2] The official transcript used the term "miss stepping," illustrating the problem with semantics.

4

stairwell and was injured as a result.

In support of his argument, appellant cites *Harris*, a criminal case. *Harris v. State*, 122 S.W.3d 871, 882-83 (Tex. App.–Fort Worth 2003, pet. ref'd). *Harris* explains a two-step analysis to ascertain whether a trial court has abused its discretion in allowing testimony by a witness who has violated the rule. *Id.* The first step of the analysis is to determine whether the witness was (1) a person who was not intended to be called to testify and who was not connected to the case-in-chief, but has become a necessary witness; or (2) a person who had been sworn or listed as a witness in the case and either heard or discussed another's testimony. *Id.* If the witness had "personal knowledge of the offense and was clearly anticipated as a witness," the second step of the analysis requires the court to determine whether the witness actually conferred with or heard the testimony of another witness, and whether the witness's testimony contradicted the testimony of a witness he actually heard from the opposing side, or corroborated the testimony of another witness he actually heard from the same side on a question of fact bearing upon the issue of guilt or innocence. *Id.* If both of the above criteria are met, then the trial court abused its discretion by allowing the testimony of the witness. *Id.*

Appellant correctly points out that: "[t]he premise underlying the rule is that the truth is more likely to be reached by presenting the Jury each witness['s] unalloyed, independent version of an occurrence uncolored by previous testimony in the trial." *See Franklin v. State*, 733 S.W.2d 537, 540 (Tex. App.–Tyler 1985, pet. ref'd). *Franklin* goes on to say: "Even the most righteous truthteller may be unconsciously influenced. And to allow each succeeding witness to harmonize his story with those who precede him would undermine the test of cross-examination." Aside from again being a criminal case, *Franklin* is

distinguishable on the facts because in that case the two defense alibi witnesses excluded had been in the courtroom and actually heard the officer's critical testimony concerning both the identification of appellant and the time period within which the offenses had occurred. *Id.* at 538. The alibi witnesses could then tailor their own testimony knowing the critical evidence.

Appellant argues that Lawrence tailored his testimony to respond to Gonzalez's and Hervey Martinez's eye witness testimony. He cites several cases, including *Elbar, Inc. v. Claussen*, 774 S.W.2d 45, 51 (Tex. App.–Dallas 1989, writ dis'm), which provides that, "[r]ule 614 of the Texas Rules of Civil Evidence, commonly referred to as 'the rule,' provides for the exclusion of witnesses from the courtroom so that they cannot hear and be influenced by the testimony of other witnesses." *Id.* "Sequestration minimizes witnesses' tailoring their testimony in response to that of other witnesses and prevents collusion among witnesses testifying for the same side." *Drilex Sys.*, 1 S.W.3d at 116. *Drilex* also observes: "A violation of the Rule occurs when a nonexempt prospective witness remains in the courtroom during the testimony of another witness, or when a nonexempt prospective witness learns about another's trial testimony through discussions with persons other than the attorneys in the case or by reading reports or comments about the testimony." *Id.* at 117.

Appellant concludes that Lawrence's actions directly violated the rule and there is no question that Gonzalez's testimony influenced Lawrence. However, appellant fails to show whether or not Gonzalez's trial testimony differed from his deposition testimony, which was known to Lawrence. Appellant does not point to a single material trial statement by Gonzalez or Martinez that was somehow made known to Lawrence, who in turn changed

6

his testimony based upon that testimony. The record reveals that the only new information Lawrence learned was from defense co-counsel, who picked up Lawrence at the airport and discussed the case with the witness before the rule was invoked. The new information concerned the intoxicated state of co-worker Tim Riehl.[3]

In response to appellant's contentions, appellee first notes that appellant waived any alleged error by proceeding after the court's hearing on the matter without first obtaining a ruling. After the hearing, appellant's trial counsel did not renew his objection and stated he was ready to proceed. The most likely inference would be that appellant's counsel was satisfied that no significant rule infraction had occurred. To preserve error, a party must secure a ruling, explicit or implicit, or if the court refuses to rule, object to the refusal. *See* TEX. R. APP. P. 33.1(a)(1)(A), (B)(2)(A), & (B). While appellee's challenge is not without merit, we will nevertheless address the merits of the issue.

Appellee argues that under the standard of review, abuse of discretion, no abuse has been shown. Appellee cites a number of cases where the trial court's decision to either exclude or allow a witness to testify was upheld. One case, *Bishop*, demonstrated reversible error for the exclusion of a witness under the rule. *Bishop v. Wollyung*, 705 S.W.2d 312, 314 (Tex. App.–San Antonio 1986, writ ref'd, n.r.e.) (holding that Bishop's wife should not be excluded from the proceedings on retrial because she was a party in interest). More in point than this proposition of law is our holding in *Weeks*. *See Weeks v. Heinrich*, 447 S.W.2d 688, 697 (Tex. Civ. App.–Corpus Christi 1969, writ ref'd n.r.e.). There, appellants showed that two witnesses testified they met with appellee and his counsel and the latter talked to them about their testimony. *Id.* The rule had been invoked, but neither

---

[3] There is no indication that Riehl's intoxication, *vel non*, played any part in appellant's fall.

of the witnesses had been sworn or heard any of the testimony at the time of the meeting. *Id.* Appellants were allowed to question the two witnesses and to develop the circumstances surrounding the meeting, both on bill of exception, and thereafter in the presence of the jury. *Id.* The trial judge had the discretionary authority to permit the testimony or to exclude it. *Id.* The *Weeks* appellants did not demonstrate abuse of discretion in admitting or refusing to strike the testimony. *Id.* (citing Tex. R. Civ. P. 267; *Sw. Bell Tel. Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex. 1965); *Ins. Co. of N. Am. v. Parker*, 434 S.W.2d 159, 161 (Tex. Civ. App.–Tyler 1968, no writ)).

Appellee aptly points out that the trial court went to considerable lengths to ascertain whether the letter and spirit of rule 267 had been adhered to. She conducted an extensive hearing out of the presence of the jury. She asked a number of questions to counsel, Elizondo, and Lawrence. It was the trial judge, not appellant's counsel, whose inquiry brought out the fact that Lawrence apparently had not heard before the trial that Riehl showed up for work intoxicated. However, as we noted above, this occurred before the rule was invoked. Appellant's counsel was afforded ample opportunity to question all concerned, and seemed to acquiesce to the further trial testimony of Lawrence.

The trial judge was faced with the same question we face today. When counsel changes a question from "What's the first thing you heard?" to "Did you testify to that?" is a witness expected to answer in the exact same language? Is there a significant difference between a mis-step and a slip, or as appellant's counsel questioned Gonzalez, about the "fall down the stairs?" At one point Gonzalez testified: "I only slipped and I don't know how things happened because it was a matter of seconds." There were variations in testimony by both Gonzalez and Lawrence. At least one appellate criminal opinion held that we must

8

presume that the court has properly exercised its discretion until the contrary is shown. *Tijerina v. State*, 460 S.W.2d 123, 124 (Tex. Crim. App. 1970).

In addition to the problem of semantics, several difficulties face appellant's attempt to show an abuse of discretion. Lawrence had not been previously sworn as a witness or admonished by the trial court. We do find fault in appellee's counsel's failure to admonish the witness as instructed by the court. Lawrence was already familiar with the prior testimony of Gonzalez, and others, whose depositions were previously taken. Lawrence was, after all, a company vice-president and risk manager. Unless Gonzalez changed his prior deposition testimony at trial, which is not contended, then Lawrence was already familiar with appellant's contentions. Lawrence had revisited the scene of the fall and could have refreshed his recollection of the particulars, such as the presence of non-skid paint. Lawrence spoke with counsel, which is permissible, and learned of the only new factor, the intoxication of Riehl, before the rule was invoked. Lawrence was not in the courtroom during the prior testimony. Moreover, even if Lawrence changed his testimony, it does not necessarily follow that the change was due to a rule violation.[4] All factors that appellant argues to suggest he changed his testimony were presented to the jury, who were charged to weigh Lawrence's credibility. The record does not otherwise distinguish between what Lawrence knew prior to his conversation with Elizondo, and what, if anything, he may have learned from Elizondo. Nor does the record clearly differentiate between what Lawrence may have discussed before the rule was invoked and what may have been discussed after the rule was invoked. And finally, as appellee points out, the trial judge conscientiously and painstakingly addressed the situation presented to her.

---

[4] A classical violation of logic occurs when it is argued that because a event follows another event, that the first caused the second. "*Propterea quod ergo propter quod.*"

9

The trial court, in the exercise of judicial discretion, must determine whether the witness's testimony will be received. *Johnson*, 389 S.W.2d at 648 (holding that the mere fact or circumstance that a trial judge may decide a matter within his discretionary authority in a manner different from what an appellate judge would decide if placed in a similar circumstance does not demonstrate that an abuse of discretion has occurred). We conclude that appellant has not demonstrated that the trial judge abused her discretion. *See Drilex Sys.*, 1 S.W.3d at 117 (stating that when the rule is violated, the trial court may, taking into consideration all of the circumstances, allow the testimony of the potential witness, exclude the testimony, or hold the violator in contempt). We overrule appellant's first issue.

## II. Legal Sufficiency

In his second issue, appellant argues the evidence is insufficient to support the contributory negligence finding of the jury. He argues that a seaman's conduct is negligent only when there is a safer alternative available which the seaman knows, or should have known, and nevertheless proceeded with the unsafe choice, citing *Shipman v. Central Gulf Lines, Inc.*, 709 F.2d 383, 386 (5th Cir.1983). More accurately, *Shipman* holds that in order to support a jury finding of contributory negligence, the seaman must have had a duty to act or refrain from acting. *Id.* While a seaman's duty to protect himself is slight, the duty does exist.[5] *Id.* A seaman would not be contributorily negligent merely because he used an unsafe tool or appliance or proceeded in an unsafe area of the ship. *Id.* "Where it is shown, however, that there existed a safe alternative available to him, of which he knew or

---

[5] This "slight duty" concept was heightened in later cases. *See e.g., Gautreaux v. Scurlock Marine*, 107 F.3d 331, 339 (5th Cir. 1997) (discussed *infra*).

should have known, a seaman's choice of an unsafe course of action can properly be considered in determining whether he was negligent." *Id.*

Appellant also argues from *Gautreaux v. Scurlock Marine,* 107 F.3d 331, 339 (5th Cir. 1997). *Gautreaux* is inaccurately cited for the proposition that a seaman does not have a duty to find the safest way to perform his work. More accurately, the case holds that a seaman is obligated under the Jones Act to act with ordinary prudence under the circumstances. *Id.*

> The circumstances of a seaman's employment include not only his reliance on his employer to provide a safe work environment but also his own experience, training, or education. The reasonable person standard, therefore, and a Jones Act negligence action becomes one of the reasonable seaman in like circumstances. To hold otherwise would unjustly reward unreasonable conduct and would fault seamen only for their gross negligence, which was not tl

*Id.* (citations omitted).

### A. Standard of Review

For the Jones Act, both the burden of proof and the standard of appellate review is less stringent than under the common law. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998) (citing *Texas & Pac. Ry. v. Roberts*, 481 S.W.2d 798, 800 (Tex. 1972)). As with the law on causation, the FELA standard of appellate review applies in Jones Act cases. *Id.* The purpose of the Jones Act standard of review is to vest the jury with complete discretion on factual issues about liability. *Id.* Once the appellate court determines that some evidence about which reasonable minds could differ supports the verdict, the appellate court's review is complete. *Id.* Essentially, a Texas court of appeals may not conduct a traditional factual sufficiency review of a jury's liability finding under the Texas "weight and preponderance" standard; rather we must apply the less stringent federal

11

standard of review. *Id.*

## B. Analysis

Appellant argues that the only witness to the accident, Martinez, did not indicate any contributory negligence on appellant's part. Martinez heard no criticism of appellant's negotiation of the stairwell. Appellant further argues that had the trial court properly excluded Lawrence's testimony, no evidence would support the adverse jury finding. "A finding of contributory negligence without Lawrence's testimony is 'mere conjecture and speculation.'" However, we have already held the trial court did not abuse her discretion by admitting Lawrence's testimony.

Appellant worked on the vessel in question from 1998 to 2005. He was intimately familiar with his workplace and had traversed the stairwell in question hundreds of times. If indeed the paint on the stairs lacked non-skid material, as a watch engineer appellant had authority, when the ship was underway, to address and repair the unsafe condition. Appellant himself was unsure how the accident happened, although he testified the stairs were clean and dry and, if there was any water present, he brought it in on his shoes. The vessel was not on the high seas or underway when the accident occurred. The vessel was stationary and the seas calm. Appellant testified that there was an alternate route available, had the need arisen. While appellant testified that he slipped, he told a physician that he "lost his footing." In Lawrence's testimony, appellant was quoted as saying he "miss stepped [sic]." Appellant's own lawyer described the incident as a "fall." Additionally, the jury was furnished with a photo of the stairwell, and as appellant's trial counsel pointed out, the jury could see for themselves the condition of the stairwell. Finally, the vessel was subject to regular Coast Guard inspection and they had not noted material defects.

## C. Conclusion

Appellate inquiry is limited to whether there was any evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a "manifest miscarriage of justice." *Shipman,* 709 F.2d at 385. No plain error is argued or apparent. We find that there is some evidence of contributory negligence about which reasonable minds could differ. *See Maritime Overseas Corp.,* 971 S.W.2d at 406.

We overrule appellant's second issue. The judgment of the trial court is affirmed.


DON WITTIG,
Justice

Delivered and filed
the 24th day of June, 2010.